Good morning, Your Honors, and may it please the Court, I'm Kathleen Foley here on behalf of Suzanne Ivie. I'd like to reserve three minutes for rebuttal, please. This appeal is about whether AstraZeneca preserved its contention that Ms. Ivie's organ claim lacked a sufficient organ nexus. I'd like to begin with the party's joint pretrial order. On page 184 of the record, AstraZeneca agreed in paragraph 3B that it is an employer under organ law. The statute defines an employer as any person who, in this State, that is, in Oregon, directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed. On the same page in paragraph 3A Let me, that, what did you just read from? I'm sorry, that's the statute that's cited on page 184, that's Well, there are three different statutes cited there. Sure, excuse me, it's the, it's the Oregon statute, so that 659 Does the Oregon definition that you just read include any reference to geography? It does, and AstraZeneca conceded below that it was met on page 184 of the party's joint pretrial order. Now, this is the only geographic nexus that appears anywhere in the relevant statutes, and AstraZeneca conceded that it was met, and that Ms. Ivie was also an employee under the relevant Oregon statute, which is 659A.0013. And now I'd like to look at what AstraZeneca says, despite that concession, was sufficient to put Ms. Ivie on notice of its intention to contest Oregon nexus. On page 202 of the record, AstraZeneca sets forth its defenses with respect to Ms. Ivie's Oregon whistleblower claim. It incorporates by reference its defenses to the Federal False Claims Act retaliation claim, which obviously don't mention Oregon, and it concludes by denying that Ms. Ivie, quote, is entitled to any legal or equitable relief. Now, on that basis, AstraZeneca wants to bring in due process arguments, choice of law arguments, and extraterritoriality arguments, highly developed legal doctrines that it did not raise until after the jury had rendered its verdict for Ms. Ivie below. In addition to being foreclosed by this circuit's precedent, any version of AstraZeneca's proffered rule would invite gamesmanship and reward carelessness. This Court squarely held in First National Bank of Circle that negative defenses must be disclosed. Were that rule abrogated or watered down, trials in this circuit would be longer, more expensive, and far less efficient at resolving issues that are actually disputed. Now, here, until AstraZeneca filed this Rule 50A motion, all of its actions in the prior 20 months of pretrial litigation were those of a party that was not contesting the applicability of Oregon substantive law and did not believe there was an Oregon nexus element. So, for example — Plaintiff had more than adequate notice that AstraZeneca would raise the defense that plaintiff failed to allege a basis for liability under Oregon's whistleblower protection law. As a result, plaintiff could not cry foul. What was that based on? I think it's based on the fact that, one, AstraZeneca said failure to state a claim in its answer. It was kind of a general blanket denial. And I think it's also based respectfully on a misunderstanding of the role of the joint pretrial order. I mean, the district court seemed to feel that AstraZeneca first had said failure to state a claim in the pretrial order, which is just not true, and, second, that AstraZeneca was under no obligation to do so. The district court believed, as AstraZeneca argues to this Court, that answers and pretrial orders are alike in every regard, so that a blanket general denial, which is sufficient in an answer, is necessarily sufficient in a joint pretrial order. And I just think that cannot be true, and this Court — Well, how is that an abuse of discretion, though? Well, by definition, the Supreme Court has said that an error of law is an abuse of discretion. And what's the error of law here? The error of law is to equate answers with pretrial orders, and — But then that doesn't tell us what needs to be in a pretrial order. Sure. Well, so, I mean, the District of Oregon is pretty specific about what needs to be in pretrial orders. So District of Oregon Local Rule 16-5 sets forth the required contents of pretrial orders. And so 16-5B4 requires the inclusion of a statement of each claim in defense of that claim with the contentions of the parties. Contentions will not recite the evidence to be offered at trial, but will be sufficient to frame the issues presented by each claim in defense. And I also think the district court committed an error of law in failing to recognize that it had to modify the joint pretrial order in order to consider this sort of late-breaking negative defense by AstraZeneca. It had to do so on consideration of the manifest injustice factors, which it did not do. What law requires an amendment to the pretrial order? Well, so Federal Rule of Civil Procedure 16E says that the final pretrial order will control the action unless it is first modified to — as necessary to prevent manifest injustice. And this Court's precedents, including Hunt and including First National Bank of Circle, set forth the factors that a district court must consider in order to modify the pretrial order. And it must — so it must make a series of findings and then exercise its discretion to decide that modification of the pretrial order is necessary to prevent manifest injustice. In other words, that enforcement of the pretrial order as it was originally written would work manifest injustice. And here the district court didn't make any of the requisite findings. And then the — I think — I believe the district court made an alternate ruling, even that — even if it was not properly presented in the pretrial order, that as a matter of plain error, that the district court needed to look at the elements. What's your response to that? Well, I — I simply disagree that it was — that it would be plain error — excuse me, I'm sorry. I'm just going to stop hitting this. It would be plain error to hold AstraZeneca to its litigation choices for a number of reasons. So first, there must be an error and it must be plain. Here, the jury found liability from — you know, it found liability and it found from Ms. Ivey on the basis of the jury instructions that AstraZeneca itself proposed. Before you get into the — do you concede that the plain error analysis applies to these civil-type claims? I've seen plain error analysis, but mostly in the criminal context. I just haven't seen it in the civil context. So just — if you start from that and then explain why. Sure. Excuse me. So I don't believe — I don't agree that plain error applies here because there — But it can apply, right? I mean, you concede that in theory it can apply. It's just a very high threshold to satisfy. Well, I think that this Court's precedents are clear about what needs to happen with regard to the modification of a pretrial order, which is what occurred here. There needs to be consideration of a number of factors. And if those factors aren't — I'm sorry, can you — But he's — the question here is about whether plain error doctrine applies at all. Correct. So that's what I — but as I understand our circuit case law in this, is that plain error doctrine can apply in a civil case, albeit in a very, very rarely. That's correct. I agree with that. Okay. Yes, I do. But I don't agree that plain error can apply here because this Court has never applied plain error in these circumstances. And my friend could find no case or at least didn't cite a case. That was my problem. I couldn't find any cases applying it in this type of context. But — Sure. So, I mean, I'm happy to continue to discuss plain error and why I don't think it would be proper here. Please do. Sure. So the jury acted on instructions that AstraZeneca proposed, listing four And the only respect in which the district court modified the instruction that AstraZeneca itself proposed was to add an additional sentence, quote, If you find that the plaintiff has proved all four of these elements, your verdict should — your verdict should be for the plaintiff. Now, that instruction is at docket 143, page 15. And AstraZeneca's explicit waiver of any objection is at docket 171, page 10. So I don't think it would be fair to say that the jury erred at all acting on And there must also be prejudicial. And here, AstraZeneca had every opportunity in the prior 20 months of pretrial litigation, up to and including in the joint pretrial order, to make known its intention to contest Oregon Nexus to make this an issue. And so — At some point, I'd like you to get to the merits of the issue. I understand the important argument with regard to whether it's been waived or applied here. Sure. So AstraZeneca makes sort of three different sorts of arguments. With respect to choice of law, an important principle of Oregon choice of law rules is that the parties can agree to the application of Oregon law. Now, they can do this either by contract or by agreeing to the application of Oregon law after the ad issue amends take place, or, as occurred here, by failing to argue for the application of foreign law. You're getting back to argument number one, and I'd really like you to address argument number two. Sure. Because I've got to say, it doesn't make a lot of sense to me that Oregon law would be chosen in a context where Oregon's connection with the transaction seems fairly limited, at least as compared to other jurisdictions. Sure. So with respect to due process and extraterritoriality, which is, I assume, where you'd like me to go. Well, because even Oregon's principle of extraterritorial — easy for me to say, right? You know what I mean. What I'm looking at here is a transaction where your client is in Utah, and that's where she lived, and that's where she maintained her business. That's where the transaction's involved here, or that's where her termination took place. Why is it that Oregon gets to tell the rest of the country what law should apply here? I mean, getting realistic, I realize your firm's come in later, but why would this case have been filed in Oregon in the first place, but for the possibility that Oregon had more favorable law, and you're looking for the best law you can find? But why should that law be able to dictate to other states what the law applied to this transaction should be? Sure. So I just want to put a pin in the fact that, had this been contested, it could have been litigated, and the trial record could more fully answer this question. That's issue number one. I got that. But I really want to address issue number two. I understand. I understand. So here are a couple of things. First of all, Ms. Ivey was an Oregon employee working for an Oregon employer that reserved the right to control her performance in Oregon. Let's get past words here, because you're calling her an Oregon employee working for an Oregon employer based on the definition you gave me, but you're not denying that she, in fact, lived in Utah and worked in Utah, and that transactions mostly took place, it appears, in Utah. Well, I do deny that she worked exclusively in Utah. I didn't say exclusively. Where did she spend most of her time? The trial record is not entirely revealing on this. Let's get to the reality. Let's assume for the moment that she actually worked where she lived, in Utah. So why should Oregon be able to tell Utah what law should apply here? So Ms. Ivey did spend some of her time working in Oregon, but even if she spent all of her time working exclusively in Utah, AstraZeneca was directing its illegal conduct into the state, conduct off-label marketing that was illegal both under federal law and under Oregon's version of the False Claims Act. And so it's fully in Oregon's interest to, as the Oregon Supreme Court put it in Swift & Co v. Peterson, to exercise its police power to protect the people and property of this state. And so in protecting Ms. Ivey, whether or not she was an Oregon employer, for bringing this information forward, that would be protecting the people and property of the state of Oregon, and it would be a proper exercise of the police power. And I just want to add briefly, because I see I'm eating into my rebuttal time, that that case, the seminal case on extraterritoriality in Oregon, is 71 years old. And the district court noted itself, I believe it's at page 468 of the record, that the shape and even the continued vitality of the extraterritoriality doctrine is unclear. And so for that reason, I think if the court has any doubts on this score, it should certify the question to the Oregon Supreme Court and allow that court to consider it in the first instance. Great. I'll give you the rest for a rebuttal. Good morning. May it please the court, Thomas Peterson on behalf of the appellee. I'd like to start with Judge Bumate's question directed to this pretrial order preservation issue. And that was his question about the abuse of discretion standard, because I think it's enormously relevant here. As I've read the Ninth Circuit case law on this, there are, I think, at least three different layers of discretion that are relevant when you interpret a pretrial order. And I found in particular Judge Ferris's opinion for the court in Miller versus Safeco, which is cited in the briefs and quoted in the opening brief, it lays out those different layers in a helpful way. The first is there's a layer of discretion in interpreting the pretrial order and how the district court wants to do that. Second, Judge Ferris talked about there's a layer of discretion in determining what its preclusive effect is to be. And third, there is a layer of discretion associated with the court's power to modify the pretrial order, which can be done implicitly, as Judge Ferris uses that term. That is, without a motion in the Hunt case and so on, while it sets out standards when a motion is filed, there is no absolute requirement that the court may not use its power to implicitly or, as Judge Rawlinson speaks about it in the Al-Hakim case, impliedly modify a pretrial order. And I think it's important, in thinking about pretrial orders, that we keep in mind that these are not documents which can or should be construed as though you were engaging in some sort of strict rule of statutory construction. This court has also made very clear, and the Al-Hakim case... Yes, Your Honor. Speaking of that case, can you tell me why that case doesn't... is not dispositive in favor of the appellant here? It seems to me Al-Hakim, if I'm pronouncing that right, resolves this case completely. We held, in that case, that even if the party has the burden of proof, or doesn't have the burden of proof... if a defendant doesn't have the burden of proof as to an issue, it's not an affirmative defense, but it's a negative defense, that defendant still has the obligation to recite that in the pretrial order and to put that at issue, and you didn't do that here. Well, Your Honor, we did by way of our general denial of any liability, and there's no knife... I mean, with respect, that's absurd. Well, no, I don't think so, Your Honor. I mean, so let's look at this sort of step-by-step. So the plaintiff makes this, what I would submit as a totally unnatural suggestion of bringing the case in Oregon, and then in paragraph 4, the first amended complaint lays out that a substantial majority of the unlawful acts occurred there. That then we... there is nothing after that which suggests that the plaintiff is ever relieved of her obligation of establishing a nexus to Oregon that's sufficient for purposes of the case. So... So under your definition, the problem here, as I see it, is that it would allow a party to rest on a very vague general denial, and that would basically eviscerate the rule, the circuit rule interpreting pretrial orders requiring that all negative defenses or affirmative defenses be stated in the pretrial order. Well, Your Honor, I think... You wouldn't have to say anything. No. No, I think it's a question of up to the district court judge to exercise discretion in order to determine how to interpret the level of specificity that we're going to put into the pretrial statement. And in the Al-Hakim case, as Your Honor will recall, the court actually sanctioned going forward with an issue in that case, which was not disclosed in the pretrial order, but was deemed by the court to have been at least impliedly... the order had been impliedly modified, not on motion, to allow that issue to be entertained. And let me just... Again, I think it's important to think about how... granularity would you declare as a matter of law is necessary for purposes of what an issue in the case is going to be. And if you impose too much granularity and you circumvent the court's discretion about it, I think you create forms of pretrial order which are unworkable and which themselves can create the capacity to be traps for the unwary. Let me just point one thing out about this. If we're going to have this standard, then I'd like to draw to the court's attention the fact that the claim that's described in the pretrial order is not the claim that was tried. The sixth claim, as it's identified in the pretrial order, is a claim under 6598.200, which is the whistleblower claim that is relevant if you're talking about public employment. The case that was tried is the claim under 6598.199. So if we're going to take a, what I'll call an uber care strict interpretation of every word in the pretrial order and take away the district court's discretion with respect to it, I think you're going to create traps for the unwary and you're not going to do anything to facilitate the prompt adjudication of cases. And particularly here, when the plaintiff has never identified anything that she would have been able to present which would have addressed this issue of Oregon law about the necessity of proving a nexus and creating logical circumstances for placing her case in the Oregon court system. I think she's offered an explanation for why it is their position that Oregon law should apply. That in fact, the off-label marketing included to practitioners in Oregon, and that presumably is something they could have proved if they thought they were going to be put to the test on that. Your Honor, let me speak to that because I know you discussed that with my friend. So that's not sufficient to establish the nexus for purposes of the Oregon whistleblower statute. This is not a consumer protection statute. So the focus here is not, it's on a claim which is designed to redress behavior which is retaliatory in the workplace. And there's no evidence here of any connection to Oregon with respect to that retaliation. I mean, the only nexus has to do with the fact that her territory- It's not hard to create that. I mean, the whistleblowing is blowing a whistle. And the whistle could be heard throughout her territory, which would have included Oregon. I could imagine Oregon could craft a statute, or the Oregon Supreme Court could craft a doctrine that would affirmatively proclaim, we're vigilant in protecting our citizens. And if you interfere with somebody who's trying to warn our citizens, we're coming after you. You could have other due process type issues there, but it's not so hard for me to imagine that, in fact, the argument that we heard is an argument that would have been sufficient to establish a basis for Oregon law being applied. Here's why it doesn't work, Your Honor. The whistleblowing, and this is her testimony. The whistleblowing that her retaliation claim is not based on evidence that anyone actually went to any doctor or prescriber of medication and they prescribe it for a use which is not FDA approved. There are arguably three instances of whistleblowing, and I note the jury rejected her federal law whistleblowing claim. But nevertheless, there are arguably three examples of whistleblowing, and what it involved were communications to the employees, the sales representatives who were subordinate to Ms. Newman, who is accused of doing it. The record is clear that there is no evidence that anyone actually went and proposed to any doctor an off-label use of the medication. In fact, there's testimony from several different people who were among the group who heard these. Most of them testified they didn't understand them to be encouraging off-label marketing in the first place. But in any event, they certainly didn't go tell any doctor about that, and there was an investigation internally, to be true, that concluded there was no basis for this, and as I mentioned, the jury rejected the very same whistleblower theory under federal law. So there isn't, and again, you go back and you look at the relevant, the cause of action, which is the 659A.199 retaliation cause of action. And as to that, there is the focus, the public policy that's being protected is protecting employees and their ability to come forward. And in her case, that was all an event which was relevant in Utah. And I would also add that Oregon has also helped illuminate for us what sort of connection you need to have for purposes of having a claim in the Oregon courts. And that's by way of the part of the Oregon Choice of Law Statutory Scheme, which was adopted in 2009, which specifically says that for a non-contractual employment claim, and the statute is 15.430.6, that what makes a claim an Oregon claim under Oregon law is going to be a situation where the principal place of the plaintiff's claim is in Oregon, or alternatively, the injury is in Oregon. And in this case, neither of those situations is present. And so this statute does not, I submit, justify a conclusion that Oregon law would apply. And again- Why isn't there any identification of that argument in the final pretrial order? I beg your honor, I didn't- Why isn't there any identification of that as a legal issue or otherwise in the final pretrial order? Your honor, because it was, I would say that it was, in our view, it was covered by the denial of any basis for liability under the relevant statute, and then by the judge's discretion in deciding whether or not it should have been identified in more detail based upon those layers of discretion that I was discussing with you out of- When I look at the final pretrial order, we're talking about Claim 6 here. Whistleblower retaliation, is that correct? Yes. It's ER 201 and 202. Yes, I have it right here. And defendant contends AstraZeneca restates its response to plaintiff's contentions in paragraphs 2 through 32 of Claim 3. Well, Claim 3 is the federal statutory claim. Correct. There are no defenses. The federal statute does not apply. So how does repeating those defenses set out the current basis for defense to the Oregon statute? Because under the defendant's contention, it says AstraZeneca denies that Ivey is entitled to any legal or equitable relief. And that's my concern. Because it seems to me this basically turns the general denial into a sufficient basis for a defendant to come up with any kind of argument later. What is it? And you heard me before read to your colleague the statement from the district court as to AstraZeneca having made sufficient, called sufficient attention to this issue, so plaintiff should have been familiar. But as I went through the record, I had real trouble figuring out where it was that that attention was called, so what was it? It's the general denial if we go back to the first of it. The general denial doesn't call attention to anything. It just says I'm not liable, and that leaves a universe of defenses. Your Honor, let me, I want to continue answering your question, but I'd like to see if I could suggest you another way of thinking about this in doing so. And that is, all right, so if it should have been in there, so first I ask myself, so why shouldn't plaintiff have laid out her responsibility that this was an element of her claim, because she concedes, for example, in a reply brief that extraterritoriality is a requirement of Oregon law, which bears, I think, on why it is that this doesn't merit certification to the Oregon Supreme Court, despite the age of the State Farm case. But moreover, so if you look at the Ninth Circuit cases, and the parties have talked about a lot of them, that involve pretrial orders. Some of them are abusive discretion review of orders modifying them, which I don't think, if we're going to go down that road, here it should be abusive discretion review of an order which impliedly modifies it, if your honor is not content with what it said, and Judge Ferris and Judge Rawlinson have suggested that's permissible. But then if you look at other of the cases the party has cited, and I'm looking at Contreras, Foster Poultry Farms, Goldamas, Olsham, Pierce County Hotel, the first National Central case that Judge Schwarzer wrote for you. All those cases are situations where you have one of three scenarios. You have either an entirely omitted claim, not an issue, and what level of granularity do we insist for that? Not an issue, we have a defense. I mean, even in the Al-Hakim case, we're talking about an omitted defense. That is where the defendant was going to come in and say that the same employment action would have occurred regardless of evidence of discrimination. Or we have, as in this first National Bank Circle case, we have a situation where there has been an affirmative statement that has induced what I'll call a reliance interest on the party who doesn't want to see that the order changed, and I think that's the only case where this court has ever reversed in this area that I can find. We don't have anything like here, and there's nothing about the proceedings leading up to the court's decision to allow this issue to be tried that was a reliance interest. Can you address the plain error argument? So I've not found a case where we've used a plain error in a situation like this, assuming that the argument was forfeited in the pretrial order. Can you be safe on plain error analysis? Yes. So I think the case where the court has gone through the analysis is the Go Daddy case, which the district judge used in her footnote four, where she concluded that that's, I think, where it's recognized and applied in a civil context. And I think the plain error is a byproduct of the fact that there has been no evidence that links up any of the discrimination to Oregon, any of the acts of retaliation, no consequences to that because there was no evidence of any actual off-label marketing that crept its way into Oregon or and then also you've got the fact that this principle that goes back at least to the State Farm case about the presumption of no extraterritoriality is conceded in the reply brief and it's a constitutionally required feature of comedy. So I don't think there's anything about it which is remarkable and I see I'm running into the red zone. So unless the court has more questions. Thank you, counsel. Thank you. So I'd like to make a few points, but of course, please feel free to jump in with questions as they arise. So my friend represents this circuit's prevailing rule as a trap for  jury, but here AstraZeneca's story about what happened was that it affirmatively knew about this issue on the basis of this IV single venue allegation, an allegation that it did not challenge by contesting venue and that was in fact superseded by the joint pretrial order. But during trial and excerpts of record seven, AstraZeneca said in moving for judgment under Rule 50A, this is part of the prima facie case under the Oregon statutes. We sat and listened to all of the plaintiff's testimony. They put on no evidence at all that anything happened in Oregon that would allow a nonresident to recover under these statutes. So they sat and listened. It's not as if this was an issue that sort of occurred to them late in the day. But I think my more important point is that trials are mechanisms for resolving disputed issues of fact and there are extremely expensive ways to do that for the courts and therefore for the taxpayers, for the parties. The preservation of an issue for trial by including some mention of it in the pretrial order is an extremely light lift, especially when compared to the cost savings that result from not dragging everyone involved, including their jurors, through potentially additional days of trial to establish propositions that no one in fact has ever heard of. So I think it's important to understand that the proposition that merely including some sort of general denial in a pretrial order was sufficient. In fact, were that the rule? I don't see any reason why defendants wouldn't just deny that the plaintiff was entitled to any equitable or legal relief and just leave it at that and call it a day, especially if this Court — No. No, they didn't. And they didn't include it on the verdict form that they proposed, which was the form the district court adopted and used. They didn't include it in the jury instructions, which the district court adopted except for its addition of a sentence saying that the plaintiff should get judgment if the four elements that AstraZeneca listed were established. You were invited in the answering brief to provide any showing that you could prove some nexus, and I didn't see any response to that. Would there be facts to show some nexus, even if it's outside the record? Sure. So a few points here. First of all, at a minimum, we would have presented evidence of the extent of Ms. Ivey's work in Oregon and the amount of time she spent there supervising PSSs, visiting doctors' offices to market AstraZeneca's drugs. Now, the district court noted at page 9 of the record that, quote, performing an unspecified amount of work in Oregon, unquote, didn't support the application of Oregon law here, and had AstraZeneca revealed its intention to contest Oregon nexus or had the district court modified the joint pretrial order in the middle of trial rather than after a verdict had been rendered, then we certainly would have presented that evidence. But I think another point I'd like to make is that we would have litigated this entire case in the trial court very differently. The lead trial counsel essentially said to the jury, you know, give us either the Federal False Claims Act retaliation claim or the Oregon whistleblower claim. We don't much care which. Now, had this been properly disclosed to Ms. Ivey that this was going to be an issue, then certainly we would have leaned further into the Federal False Claims Act claim in addition to presenting our case very differently. But I think just one more point I'd like to make is that it can't be the case that we have to point to extra record evidence in order to prevail here. In Galdamez, this court found that incurable prejudice was present in the lack of opportunity to put on additional evidence. It's just impossible to know how this trial would have played out had this issue been properly disclosed, and that's why this Court's precedents are so clear that in this instance the judgment must be reversed. Thank you, counsel. Idle curiosity having nothing to do with how this appeal will come out. Sure. I used to try cases, and sometimes you'd sit at a jury verdict and ask yourself, how did they come out with that? Do you know what the speculation was after this one, how it is the jury came back with rendering a verdict on the one claim they rendered a verdict in favor of plaintiff, the Oregon whistleblower statute, and not the others? It's funny you should ask that question. I actually do know. I'll pose this to your colleague, too. I'm just curious as to how this came out. Of course. Sure. Thank you. Well, so the jurors, essentially there was one juror that was a holdout in terms of the giving judgment for Ms. Ivey, and the rest of the jury said to her, well, you know what, you can pick whether it's going to be the Oregon FCA claim or the whistleblower claim. And because she chose the Oregon whistleblower claim, here we are. Actually, for the sake of letting others hear. Your Honor, also, there is, I think, a different element of causation under the federal, the first verdict and the second, because there's, and this would be relevant if the court has to pass on the alternative neutral motion that she didn't reach, because under the way the jury was instructed under the federal claim, it could have decided that because it was led to the same employment decision would have been made. In other words, that if whistleblowing retaliation was not the but-for cause of her termination, but she would have been discharged anyway, that that would defeat the federal claim but not the Oregon claim. And that becomes relevant to whether or not the economic damages, which were just a single lump award on all of the preceding causes of action, would need to be reevaluated by the district court as perhaps also the non-economic. Appreciate scratching my itch. Thank you, counsel.
judges: CLIFTON, BUMATAY, Baker